UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS    ACTION NO 04-

FILED
CLERKS OFFICE
2004 SEP 24  P 1:36

U.S. DISTRICT COURT
DISTRICT OF MASS

HEIDI K. ERICKSON
    Plaintiff

VS.

REQUEST FOR EXTENSION OF TIME TO FILE RESPONSE

THE STATE RACING COMMISSION, ET AL

1.    Plaintiff Erickson, in response to this Honorable Court's Orders granting her 35 days to file a responsive pleading demonstrating that her claims have merit and in response to the fact that she CAN demonstrate the Defendant (Racing Commission Discriminated Against her due to her disability and in preparing her amended complaint will be adding an additional complaint/claim of discrimination based not only on disability but also based on sex (female)).

2.    Plaintiff has been unfairly prejudiced by bias defendant employees who harass her while she seeks adjudication, resulting in Plaintiff requesting this additional time of 70 days and/or until December 1st, 2004.

IN SUPPORT

3.    Plaintiff states that she has previously identified herself as disabled (dyslexic) and that writing is laborious and requests additional time to prepare, and points to Affidavit Dr. Dinklage of Harvard University recommended extra time to write (Ex 1) in addition Plaintiff has been experiencing increase in medical problems of seizures from undue stresses that has caused her much problems and was recently found by the state disabled qualifying for emergency relief and unable to work due to the aforementioned problems agreivating her disability.

4.    In addition Plaintiff has recently become homeless 2 weeks ago, seeking protective housing every night and as a result in part of this trial court and because of Defendant's employees who have deprived Plaintiff her due process rights and fair, proper adjudication (See recent SJC filing 04-0370 Somers vs. Erickson) Single Justice Review under MGL 211 sec 3 or 4 from a denial of a Waiver of Appeal Bond and the Judge Paul Mahoney who Plaintiff has filed a complaint in the Offices of the Judicial Complaint Committee at 14 Beacon Street which is ultimately reviewed by Defendant Chief Justice Margaret Marshall herself. This review surely would not pass the reasonable person test of the Judicial Cannons.

THEREFORE
Plaintiff's request for extra time to file responsive pleading in reason and that this Honorable Court allow her until December 1st, 2004 to file a response prior to it dismissing this action.

Respectfully submitted by
Heidi K. Erickson, pro se
I attest that I have stated the foregoing under oath and by the pains and penalties of perjury.




Harvard University
University Health Services
75 Mt. Auburn Street
Cambridge, MA 02138

August 29, 1994

AFFIDAVIT FROM KENNETH T. DINKLAGE, PH.D.

I am a clinical psychologist (Ph.D. from Harvard University in Clinical Psychology, 1956) who has been Psychologist to the University Health Services, Harvard University, since January of 1959. My duties in that role involve a broad clinical practice of psychotherapy and psychological testing with students and employees of the university. Concurrently I developed into a specialist in assessing learning disabled students. In each of my 35 years at UHS, I examined between 60 and 100 students in order to document their disability and to recommend accommodations. For those 35 years Harvard has acknowledged that within it's highly talented student body there are those with that built-in limitation of specific learning skills known as dyslexia. This is a neurologically based (one is born with it) language processing disorder impairing the individual's reading, spelling and expository writing abilities. Frequently there are unusual difficulties in learning a foreign language. There are persisting difficulties with spoken language as well.

Dyslexia [also called specific language disability, or according to the diagnostic manual of the American Psychiatric Association, a specific developmental reading (or writing or arithmetic) disorder], comes in all degrees of severity, from very slight to very severe. It is unrelated to intelligence; one speaks of a learning disability only in those of average or higher intelligence where there are dramatic discrepancies in language processing skills, i.e. peculiar deficits in contrast to what one would expect given the individual's intelligence, education and effort.

The most common accommodations provided by the university to students with dyslexia have been a waiver of their foreign language requirement (which was provided long before there were federal laws mandating accommodations) and/or extra time on in-class examinations. In extreme and rare cases, oral exams or other ad hoc accommodations have been made. It is frequently recommended that dyslexic students get individual and sometimes specialized tutoring support for their writing, that they use a word processor with a spelling and grammar check and, where they have trouble taking notes, to tape their lectures.

_____, referred to subsequently as the plaintiff, came to me in the spring of 1992 at the suggestion of Louise Russell who was coordinator of resources for students with disabilities at Harvard College. I saw the plaintiff on a courtesy basis since, as an _____ school student, she did not have UHS health care coverage. She wanted to discuss the implications of disclosing to _____ Division officials that she had a learning disability. She was worried particularly about any stigmatization this might cause, thus jeopardizing her graduate school plans.

AFFIDAVIT FROM KENNETH T. DINKLAGE, PH.D., continued                                    -2-

After our discussion the plaintiff decided disclosure made sense since she needed extra time on her exams and that would only be granted if she had a documented learning disability. Her prior documentation had been obtained in 1984, and therefore more recent testing was required.

I examined the plaintiff by means of interview, a writing sample and an abbreviated testing battery (Davis Reading Test, Wide Range Achievement Test and partial Wechsler Adult Intelligence Scale). Her language processing difficulties were quite obvious and an extensive testing battery was not required to see that she had a learning disability of sufficient severity to warrant extra time on her exams. At the plaintiff's request, I wrote a letter to this effect on April 15, 1992, to Owen Peterson, Coordinator of Services for students with disabilities at the Harvard          School.

After the plaintiff got over the hump of disclosing her disability, she acknowledged subsequently that further accommodations were warranted by the extent of her learning disability. At her request, I wrote two further letters on her behalf on February 22, 1993, and March 15, 1993. All three letters are appended and incorporated into this affidavit.

From my initial examination and from subsequent meetings with the plaintiff, it has become clear that her specific developmental learning disability impairs her processing of both oral and written language and both the understanding (decoding) and expressive (encoding) of that material. The degree and extent of the pattern of her learning disability compromises her reading, writing, speaking and listening skills.

Because of their difficulties with communication, people with learning disabilities sometimes show poor social judgement and I have certainly observed this in some of my interactions with the plaintiff. How much of that can be attributed to her learning disability and how much to her personality make-up would be hard to determine. The factors are thoroughly entwined and enmeshed at this point.

I, Kenneth T. Dinklage, Ph.D., sign this document and attest under the pains and penalties of perjury that the information herein is true.

_____        August 29, 1994
Kenneth T. Dinklage, Ph.D.              Date